# EXHIBIT "G"

# DECLARATION OF DEREK KAHN

I, **DEREK KAHN**, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury that the foregoing is true and correct, that I am over 18 years of age, and that the matters stated herein are based upon my personal knowledge, except where I expressly state that a matter is based upon communications, documents, investor presentations, or other information provided to us:

1) I run several ventures, including MindHyv, a freelance and portfolio-management business, DC Tile & Stone. In November 2024, I invested $500,000 with Broadstreet Global Fund LLC, into a series called BSG Series CM LLC, managed by Broadstreet Global Management LLC and marketed to me as a "Crypto/Altcoin Mining" investment carrying a 28% annual "Targeted Annual Payment."

2) I signed subscription documents on November 14, 2024. Steven S. Baldassarra, identified to me as Broadstreet's COO, signed as counterparty on Broadstreet's behalf. My $500,000 contribution was wired in three installments between November 27 and December 2, 2024, and became effective as of December 1, 2024.

3) Within about a month of funding, Broadstreet's own 2024 Schedule K-1 allocated a $310,000 loss to me — 62% of my invested capital — leaving an ending capital account of $190,000. No document Broadstreet has ever provided to me explains the basis for that loss.

4) In January 2025, I learned that the U.S. Securities and Exchange Commission had filed a fraud complaint against Broadstreet Global Management LLC, Broadstreet Inc., and its principals David Feingold, Joseph Baldassarra, and Steven Baldassarra (SEC v. Feingold et al., S.D. Fla., No. 1:25-cv-20436-DPG, filed January 29, 2025). That complaint alleges the fund raised over $1 billion from investors and diverted roughly $170 million of it to its principals personally,

while making “almost no investments.” It names BSG Series CM — the specific series I invested in — as having received approximately $199 million from investors.

5) On March 1, 2025, I received a single cash distribution of $35,000. That remains the only cash distribution I have ever received from this investment, notwithstanding the 28% annual return I was promised, which would total approximately $253,000 by now had it been paid as represented.

6) On March 21, 2025, Broadstreet sent me a written notice titled “Broadstreet Analysis — Alt Coin Mining Operation and Sale of Operations to PubCo,” announcing a planned sale of the mining operation to a public company. The notice stated that investors who, like me, joined after May 2024 would receive “their investment back plus fifty percent” — i.e., $750,000 on my $500,000 investment — to be paid in stock “in approximately 90 days.” The same notice announced that further quarterly distributions were being suspended because of the sale process. It mentioned only in general terms that my shares would be subject to leak-out provisions and volume-weighted-average-price conditions comparable to SEC Rule 144; it did not specify the actual $16.31 price floor or 18-month schedule that ultimately governed my shares.

7) The same March 21, 2025 notice included a market-analysis appendix, offered to investors as part of the rationale for the transaction's timing, whose own supporting charts were captioned as showing “synthetic data” rather than real historical data, with footnotes pointing to what appear to be AI-tool-generated files.

8) On June 24, 2025, without any vote by me or any other investor, BSG Series CM's mining hardware was exchanged for Z Squared Inc. stock under an “Amended and Restated Asset-for-Share Exchange Agreement.” Broadstreet claims that its own governing documents gave its

Manager sole, contractually "final and conclusive" authority to value fund assets and exchange them for other securities, with no ability for me to object or block the transaction.

9) From September 2 through 4, 2025, I personally traveled to Broadstreet's operations in Greenville, South Carolina, to seek direct answers about the status and timing of my investment. During the entirety of this trip, the Broadstreet representative refused to discuss the Altcoin fund, and all talks were about investing additional funds.

10) Broadstreet's own "Final K-1" for BSG Series CM, dated December 31, 2025, records only $171,000 of "tax capital transferred to public entity" against my $500,000 original investment, with an ending capital account of $0. This is the same investment for which I had been told, in writing, to expect $750,000.

11) On February 28, 2026, at 7:19 PM, I texted Steven Sconzo of Broadstreet: "Just wondering, instead of the money we have going through the IPO. Can I just transfer the 750k to a different position in Broadstreet?" Mr. Sconzo replied: "No sir, everyone receives the stock." I responded, "Okay, thanks." Mr. Sconzo did not dispute or correct the $750,000 figure I referenced, and confirmed that stock — not a cash alternative or a transfer to a different position — was mandatory for every investor. This exchange occurred roughly two months after Broadstreet's own December 31, 2025 K-1 had already recorded only $171,000 of tax capital transferred for these same shares, and about two months before Z Squared began public trading.

12) On April 27, 2026 — about 13 months after the "approximately 90 days" I had been told to expect — I was issued 47,161 shares of Z Squared Inc. (Nasdaq: ZSQR). Those shares carry a resale restriction requiring a 10-day volume-weighted-average price above $16.31 before any shares may be sold, plus an 18-month leak-out schedule capping releases at approximately 5.5% of my position per month — specific terms that were never disclosed to me alongside the

$750,000 figure I had been given. That same day, Broadstreet's investor portal (JuniperSquare) separately recorded this same event as a full “Redemption” of my original $500,000 investment — a third, inconsistent characterization of what I actually received.

13) ZSQR has traded above the $16.31 resale-restriction floor for only a brief period since it began trading, reaching a 2026 high of $16.73 on June 18, 2026, before falling roughly 82% to a 2026 low of $2.91 on September 1, 2026. Its sharpest decline coincided with July 6, 2026, the date my first monthly leak-out tranche (and, I believe, other investors' tranches) became eligible for sale. As of September 9, 2026, ZSQR closed at $3.00 per share, making my 47,161 shares worth approximately $141,483 — about 28% of the $500,000 the investor portal describes as “redeemed,” and about 19% of the $750,000 I was told in writing to expect. Most of my position remains legally unsellable under the $16.31 price condition regardless of how much time passes.

14) The gap between what I was promised and what I have actually received — combined with the ongoing uncertainty over how much of my original $500,000 principal is actually recoverable — has required my family to significantly cut discretionary spending, including reducing the trips needed to visit elderly family members. My family and I are now completing repairs to our current home so that we can sell it and relocate closer to family, specifically because we can no longer absorb the ongoing cost of traveling back and forth to maintain those relationships.

15) Over the roughly 22 months since I made this investment, I have had to independently assemble and cross-reference subscription documents, K-1s, SEC filings, trading data, and broker-verification records to understand what happened to my money — work that would ordinarily be handled by a fund's own reporting or by regulators, not by an individual investor. This has amounted to many hours of stressful financial planning, undertaken to protect

my family's financial security against an outcome Broadstreet's own representations did not prepare us for.

16) The clearest cost to my family has been personal rather than financial. The reduction in our discretionary travel funds meant we were unable to visit my wife's grandmother — a family member we were all very close to — before she passed away. We were not present for her passing, an absence I attribute directly to the financial strain this investment's failure to perform as represented has placed on my family.

17) I am troubled by what I believe is a pattern of inconsistent and, at times, contradictory representations from Broadstreet: a $750,000 value represented in writing and never corrected when I raised it again by text fourteen months later; a $500,000 “Redemption” recorded on the investor portal; a $171,000 internal transfer recorded on my own K-1; and a $16.31-per-share SEC cost basis implying yet a fourth figure (approximately $769,000 nominal) — none of which reconcile with each other or with the roughly $141,483 my position would be worth today if it could be traded. I am also troubled that Z Squared's own SEC filings disclose a valuation error in the underlying exchange itself, in which the independent valuation assumed newer, more valuable mining hardware than what was actually transferred.

18) I believe civil legal action may be necessary to protect my rights and pursue recovery of my investment. I am not seeking special treatment. I am seeking the return of money I earned and entrusted to Broadstreet in good faith, based on specific written and verbal representations that did not hold up. This has affected my family's financial security, our plans, and our relationships. I believe I am entitled to answers, transparency, accountability, and, most importantly, the recovery of the funds I entrusted to Broadstreet.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2026, in Williamson County, State of Tennessee.

DocuSigned by:
Derek Kahn
99D8C07B314E40C...
**Derek Kahn**